UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD SOUSA,

                Petitioner,                    Civil No. 07-14112
                                                  Honorable David. M. Lawson

v.

MILLICENT WARREN,

                Respondent,

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Donald Sousa, presently confined at the Florence Crane Correctional Facility in Coldwater, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of first-degree criminal sexual conduct, *see* Mich. Comp. Laws § 750.520b(1)(g) (sexual penetration of vulnerable victim causing mental anguish), following a jury trial in the Tuscola County, Michigan circuit court. The trial court sentenced the petitioner as a second habitual offender to twelve to twenty-five years' imprisonment. The petitioner alleges that he is entitled to habeas relief because his trial counsel provided constitutionally ineffective assistance; the state presented insufficient evidence to prove beyond a reasonable doubt that the victim suffered a personal injury in the form of mental anguish; the prosecutor engaged in misconduct resulting in the denial of the petitioner's right to a fair trial; the admission of prior acts evidence violated his due process rights; and the trial court violated the petitioner's due process rights by miscalculating petitioner's score under Michigan's sentencing guidelines. The respondent has filed an answer to the petition asserting that the claims are procedurally defaulted or lack merit. The Court finds that the petitioner's claims without merit. Therefore, the Court will deny the petition.

# I.

The following evidence was presented at trial. On December 31, 2001, Jamie and Jerret Moore hosted a New Year's Eve Party at their home in Caro, Michigan. Among those attending were the Moores' daughter Heather Sousa and her friend Ashleigh Hemmingway, Jamie Moore's brothers Darren and Donald Sousa, and their families. The Moores provided alcoholic beverages for their guests, including Heather and Ashleigh who were only fourteen years old. Ashleigh drank too much and vomited before she went to sleep. Ashleigh went to sleep in Heather's bed, sleeping next to Heather.

In the middle of the night, the petitioner sexually attacked Ashleigh by inserting his fingers in her vagina while she slept. The attack woke Ashleigh, who yelled, "What the fuck are you doing?" Ashleigh woke up Heather. Because Ashleigh was sleeping next to the wall, the perpetrator had to reach over Heather to get to Ashleigh. Heather woke in time to see and speak to the attacker. Both Ashleigh and Heather unequivocally identified the petitioner as the attacker. The petitioner, who was drunk, mumbled something and left the room.

Ashleigh was afraid that the petitioner would return so she and Heather moved the bed in front of the bedroom door. Later, she went to the bathroom to vomit. Ashleigh testified that she was sick to her stomach at this time because of the attack. Ashleigh began to see a counselor to talk about the New Year's Eve incident. She testified at trial, eight months after the attack, that she was still in counseling and trying to forget what happened. She testified that she still felt anger and humiliation and continued to experience emotional effects. The attack caused her to become less trusting. She refused to sleep in her bedroom alone and had been sleeping on the couch since the attack. Finally, she testified that her grades had fallen dramatically because of the attack.

Ashleigh's mother, Cheryl Ollila, testified that she noticed significant changes in Ashleigh's behavior since the attack, and she was not the girl she was before New Year's Eve. Ashleigh's therapist informed Ollila that Ashleigh had been traumatized by the event. Ollila said that Ashleigh was very angry. She corroborated Ashleigh's testimony that Ashleigh refused to sleep alone in her bedroom. She also confirmed that Ashleigh's school grades declined since the attack. Ollila stated that Ashleigh had difficulty "focusing." She described Ashleigh as withdrawn and depressed and as no longer trusting. In Ollila's opinion, Ashleigh developed irregular menstrual cycles as a physical manifestation of the trauma she experienced. She said that Ashleigh would continue to see a psychologist until she could come to terms with what occurred.

The trial court granted the prosecutor's pretrial motion to introduce evidence of other conduct by the petitioner under Michigan Rule of Evidence 404(b). The evidence consisted of the testimony of a young teenager named Tammy Peet. Ms. Peet said she was babysitting for Jamie and Jerret Moore and was sexually assaulted by the petitioner; the incident occurred at the same place as the instant offense. The petitioner went to the Moores' home after a night of drinking, woke Ms. Peet who was sleeping on the couch, and sexually assaulted her. According to Ms. Peet, the petitioner then took her to a bedroom where he raped her. The petitioner was drunk at the time of the assault and passed out after the attack. The prosecutor sought to introduce Ms. Peet's testimony to show the petitioner's "system of doing an act, common design or scheme in attacking sleeping young girls." The trial court instructed the jury that the evidence could not be used as propensity evidence or to prove the petitioner's bad character.

The petitioner testified at his trial. He claimed that the sexual encounter between him and Tammy Peet was consensual. Concerning the charged offense, he denied going into Heather's room.

He denied touching Ashleigh. He stated that the did not know any reason why Ashleigh or Heather would make up the story.

The jury convicted the petitioner of first-degree criminal sexual conduct. In his direct appeal, the petitioner raised four of the six claims (Claims II, III, IV and VI) that he raises in this habeas petition. The Michigan Court of Appeals affirmed. *People v. Sousa*, No. 244554, 2004 WL 136606 (Mich. Ct. App. Jan. 27, 2004). The petitioner's application for leave to appeal in the Michigan Supreme Court was denied because the court was not persuaded that the questions presented should be reviewed. *People v. Sousa*, 471 Mich. 866, 683 N.W.2d 676 (2004) (table).

In a post-conviction motion for relief from judgment, the petitioner raised two remaining claims (Claims I and V) that he raises in this habeas petition. The trial court denied the motion. Op. & Order, *People v. Sousa*, No. 02-8333-FC (Tuscola Cty. Cir. Ct. Nov. 10, 2005) (unpublished). The petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals raising the same claims. The court denied leave to appeal for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Sousa*, No. 272682 (Mich. Ct. App. Apr. 18, 2007) (unpublished). The petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was denied for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Sousa*, 480 Mich. 888, 738 N.W.2d 732 (2007).

The petitioner's habeas corpus petition contains the following six claims:

I.      Was defense counsel ineffective when the jury foreman was observed during trial having an unauthorized, unmonitored conversation with the chief investigating police officer witness, and counsel failed to seek the required evidentiary hearing where the state must disprove the presumptive prejudice caused by the juror misconduct as required by clearly established United

States Supreme Court case law and the Fourteenth Amendment Due Process Clause?

II. Was petitioner denied his Fourteenth Amendment right to due process of law where the evidence presented at trial was insufficient to convict because the prosecution failed to prove beyond a reasonable doubt that the victim suffered the personal injury "mental anguish," a specified element of the charged crime?

III. Was petitioner was denied a fair trial and due process of law by intentional prosecutorial misconduct where the prosecutor engaged in improper and highly prejudicial argument to the jury when he: vouched for truthfulness of his witnesses; denigrated the defendant, his defense, and defense counsel; appealed to the jurors sense of sympathy for the victim as a basis to convict?

IV. Was petitioner denied a fair trial and the Federal Constitution right to due process of law by the erroneous admission and use of overly prejudicial prior similar bad acts evidence?

V. Was petitioner denied his federal constitutional rights to effective assistance of counsel and due process of law by counsel's failure to protect and secure his statutory right to a timely requested polygraph examination, a state created liberty interest, that would have showed his innocence and obviated the necessity of a trial?

VI. Was petitioner denied his federal due process rights at sentencing where the trial court relied on inaccurate information to improperly assess additional points for increasing petitioner's sentencing guidelines range and ultimate sentence?

Habeas Pet. at I-ii.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court has "explained that an unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---,130 S. Ct. 1855, 1862, 1865 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted); *see also Knowles v. Mirzayance*, --- U.S. ---, ---, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir.

2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

First, the Court will consider the third claim in Mr. Sousa's petition that the prosecution presented insufficient evidence to sustain his conviction of first-degree criminal sexual conduct. The petitioner asserts that the state failed to carry its evidentiary burden in proving that the victim suffered personal injury in the form of mental anguish. The Michigan Court of Appeals rejected this argument, stating:

> The prosecutor's theory of the case was that the victim suffered a personal injury, as the applicable statute requires, through mental anguish. MCL 750.520b(1)(g); MCL 750.520a(1). Defendant asserts there was insufficient evidence to establish that the victim suffered mental anguish. There is no statutory definition of mental anguish, but in *People v. Petrella*, 424 Mich. 221, 227; 380 NW2d 11 (1985), our Supreme Court defined the term as "extreme or excruciating pain, distress, or suffering of the mind."

> The *Petrella* Court's analysis is instructive. This Court should consider the following factors in determining whether the evidence established that the victim suffered mental anguish:
> (1) Testimony that the victim was upset, crying, sobbing, or hysterical during or after the assault.
> (2) The need by the victim for psychiatric or psychological care or treatment.
> (3) Some interference with the victim's ability to conduct a normal life, such as absence from the workplace.
> (4) Fear for the victim's life or safety, or that of those near to her.
> (5) Feelings of anger and humiliation by the victim.
> (6) Evidence that the victim was prescribed some sort of medication to treat her anxiety, insomnia, or other symptoms.
> (7) Evidence that the emotional or psychological effects of the assault were long-lasting.
> (8) A lingering fear, anxiety, or apprehension about being in vulnerable situations in which the victim may be subject to another attack. [*Id.* at 270-271.]

The Supreme Court cautioned that this list was not exhaustive and "that each case must be decided on its own facts, and that no single factor listed below should be seen as necessary to a finding of mental anguish." *Id.* at 270.

In *Petrella,* the victim

> testified that she was fearful during the assault, and that afterwards she was very upset, frightened, and was crying. Her friend testified that when the complainant phoned her, she was screaming and her voice was hysterical, such that the friend did not initially recognize it. When her friend arrived at the complainant's apartment, the complainant was very upset and crying, and was frightened and uncomfortable when taken to the gas station to identify the defendant. The complainant's friend also testified that the complainant was not a person who cried easily. The complainant further testified that she had trouble sleeping after the incident, and continued to experience insomnia at the time of the trial. She missed three days from work immediately after the incident, and then periodically missed work from time to time due to the assault. She never again stayed in that apartment after the assault occurred. The officers who responded to complainant's call testified that she was wringing her hands, was very agitated, very upset, and very, very nervous. [*Id.* at 271.]

On these facts, the *Petrella* Court held "that the prosecution proved, beyond a reasonable doubt, that the victim suffered severe emotional and psychological consequences following the assault, resulting in a major disruption, or crisis, in her life." *Id.* at 272.

In this case, the victim testified she became physically sick after the defendant assaulted her. The victim's mother testified that her daughter was "very depressed, very withdrawn," refused to sleep in her bedroom, sought mental health therapy, and that her school performance had suffered. Also, at the time of the trial, the victim continued to suffer physical effects of the trauma, such as an irregular menstrual cycle and hives. The traumatic effects of the assault suffered by the victim clearly constituted "a major disruption, or crisis, in her life." *Id.* Thus, viewed in a light most favorable to the prosecution, we find the evidence was sufficient to establish the victim's mental anguish beyond a reasonable doubt and sustain his conviction.

*Sousa*, No. 244554, 2004 WL 136606, at *1-2.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard of review for a sufficiency of the evidence

challenge must focus on whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Id*. at 788. Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id*. at 788-89.

Based upon the evidence presented at trial, this Court finds that a rational juror could have found mental anguish as the state courts define that element of the crime. The reasons given by the Michigan Court of Appeals are adequate, but there are several additional pieces of evidence. For example, Ashleigh testified that she was angered and humiliated by the attack. She was so fearful immediately after the incident that she and Heather moved a bed in front of the bedroom door to prevent the petitioner from returning. The sexual attack made her sick to her stomach. It traumatized Ashleigh and left her a changed person — one with lingering fear and no longer as trusting of others. The evidence introduced at trial satisfied all of the factors listed by the Michigan Supreme Court in *Petrella*. Viewed in the light most favorable to the prosecution, there was ample evidence from which to find beyond a reasonable doubt that Ashleigh suffered personal injury from

the petitioner's attack in the form of mental anguish. The state court reasonably applied the *Jackson* standard. The petitioner is not entitled to habeas relief on this claim.

B.

In his fourth claim, the petitioner argues that the trial court erred by admitting evidence of the Tammy Peet incident. It is well established that "federal habeas corpus review does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Consequently, "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (citing *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985)). "When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals upheld the trial court's decision to admit the evidence under Mich. R. Evid. 404(b) on the following grounds:

> Second, defendant argues that the trial court abused its discretion when it allowed the prosecutor to present evidence of prior acts under MRE 404(b). To warrant reversal of a preserved, non-constitutional issue, the burden is on the defendant to show that "it is more probable than not that a different outcome would have resulted without the error." *People v. Lukity,* 460 Mich. 484, 495-496; 596 NW2d 673 (1998). But defendant's argument does not specifically address prejudice. Rather, it appears that he assumes that improperly admitted prior acts evidence is per se unfairly prejudicial. However, this Court recently held that we must determine whether the challenged evidence was prejudicial when viewing the evidence as a whole in a light most favorable to the prosecution. *People v. Knox,* 256 Mich.App 175, 195; 662 NW2d 482 (2003), lv pending.

> Here, we simply cannot conclude that the outcome would have been different had the prior acts evidence not been admitted. The only evidence that contradicted the victim's account of the incident was defendant's own statement that he did not "touch" the victim. It is undisputed that defendant was in the house at the time and that he was intoxicated. And both the victim and defendant's niece, who was in the

room at the time of the incident, positively identified defendant as the attacker. Therefore, reversal is not warranted on this issue.

*Sousa*, No. 244554, 2004 WL 136606, at *2.

The Michigan Court of Appeals did not address the petitioner's federal constitutional due process claim. However because the state court's analysis bears at least "some similarity" to a determination of the due process claim, this Court can review the claim under a "modified AEDPA standard," which requires a "careful review of the record and applicable law" but which "bars [the court] from reversing unless the state court's decision is contrary to or an unreasonable application of federal law." *Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007) (quoting *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005)).

The petitioner has not presented and this Court has not found any Supreme Court precedent holding that a state court violates due process when it properly admits evidence of a criminal defendant's other bad acts. As the respondent points out, the Sixth Circuit has held that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh,* 329 F.3d at 512; *see also* Fed. R. Evid. 413 and 414 (allowing such evidence in federal criminal trials). As there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1), the petitioner's fourth claim does not entitle him to habeas relief. *Ibid.*

## C.

In the third claim in his petition, the petitioner asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by vouching for the credibility of prosecution witnesses, appealing to the jury's sympathy for the victim, and denigrating the petitioner, his defense

and defense counsel. The respondent replies that this claim is procedurally defaulted because the petitioner failed to object to the prosecutor's comments he is now challenging during trial.

The Supreme Court has described doctrine of procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Although the procedural default doctrine precludes habeas relief on a defaulted claim absent satisfaction of the cause-and-prejudice test, the doctrine is not jurisdictional. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Therefore, although the Court would ordinarily resolve the procedural default issue first, "judicial economy sometimes dictates reaching the merits [of a claim] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

Prosecutorial misconduct will form the basis for a new trial and habeas relief only if the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct

must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)). The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. Flagrancy depends on four factors: 1) whether the actions "tended to mislead the jury or prejudice the defendant"; 2) whether the actions were isolated or represent a pervasive course of conduct; 3) whether the acts represent a deliberate attempt to affect the outcome of the case; and 4) the overall strength of the case. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

"[A] prosecutor cannot improperly vouch for the credibility of his witnesses." *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001). "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness." *United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999). A prosecutor cannot make remarks to incite the jury's emotions that are irrelevant to the facts. *Viereck v. United States*, 318 U.S. 236, 247-48 (1943). The state is allowed to comment on defense counsel's argument and trial strategy. *Slagle*, 457 F.3d at 522. The giving of cautionary instructions factors into the calculus of determining whether fundamental fairness was denied. *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1356 (6th Cir. 1993).

The petitioner contends that the prosecuting attorney improperly vouched for witness's credibility when he argued in his closing statement that Ashleigh had nothing to gain by fabricating her testimony as a basis for bolstering her credibility. Trial Tr., Aug. 14, 2002, at 59-60. He highlighted the evidence that Ashleigh subjected herself to embarrassing and invasive physical

examinations, police interrogations, and public exposure in order to testify against the petitioner. He also emphasized the evidence of the close relationships that bound the petitioner, Ashleigh, and Heather as a basis for arguing that the girls had no motivation to testify against Heather's uncle because it would only cause family strife. He argued that "the only reason that Ashleigh and Heather have told you what happened in the manner that they did is because that's exactly what happened early that morning." *Id.* at 60. The prosecutor made a similar argument regarding Tammy Peet's testimony. He described her as "another person with nothing to gain, basically bared her [soul] about . . . events." *Id.* at 62.

The Michigan Court of Appeals determined that the prosecutor's comments "referenced evidence or suggested inferences that the jury could derive from the evidence" and did not constitute improper vouching. *People v. Sousa*, No. 244554, 2004 WL 136606, at *2. This Court agrees. The prosecutor's challenged comments do not express a personal belief in the prosecution witnesses' credibility and the prosecutor was not attempting to evoke sympathy for the victims. Instead, the prosecutor pointed out the evidence supporting the argument that the witnesses lacked motive to fabricate evidence against the petitioner. *United States v. Bond,* 22 F.3d 662, 668 (6th Cir. 1994) (denying prosecutorial misconduct claim where challenged statement did not express a personal belief in government witnesses' credibility).

Next, the petitioner complains that the prosecutor improperly denigrated the petitioner, his defense, and defense counsel during his closing argument. The prosecuting attorney informed the jury that one of its duties was to determine which witnesses were telling the truth and invited them to evaluate witness credibility by considering motives to tell the truth or to fabricate testimony. He argued that certain defense witness testimony was "incredible," "contrived" and "put together" by

individuals with motivation to protect the petitioner.  *Id.* at 64-65, 69-70.  After defense counsel argued in closing that the petitioner did not attack Ashleigh, the prosecutor argued that the petitioner was lying:

> The fact that the defendant doesn't know what happened in Heather Sousa's bedroom to Ashleigh is a flat out lie.  When he took the witness stand and told you he didn't know, the evidence suggests that he lied.  The evidence in this case establishes not only does he commit the crime of sexual assault, he then without hesitation comes into the courtroom, raises his hand and lies about what occurred.

*Id.* at 77-78.  Finally, the prosecutor also asked the jury to "hold the defense counsel accountable for what we say to you as we talk to you during argument" and asserted that defense counsel had "mischaracterized some of the testimony that came to you."  *Id.* at 80.

The challenged comments regarding the petitioner, his defense, and defense counsel were firmly grounded in evidence presented at trial.  Ashleigh and Heather's unequivocal identification of the petitioner, who happens to be Heather's uncle, as the perpetrator provided a solid basis for arguing that the petitioner's testimony denying he attacked Ashleigh was false and that his misidentification defense was not credible.  *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (if a defendant testifies, prosecutor may attack credibility); *United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1984) (prosecutor may argue in closing that defendant is lying if defendant testifies and arguments emphasize discrepancies between defendant's testimony and reasonable inferences drawn from evidence).  The challenged statements did not express the prosecutor's personal opinion and were not improper.  In addition, the trial court gave instructions cautioning the jury not to treat the prosecutor's arguments as evidence.  The state court determination that the challenged comments did not result in an unfair trial so as to deny the petitioner due process is neither contrary to nor an

unreasonable application of Supreme Court precedent. The petitioner is not entitled to habeas relief on claim three.

D.

In claim six, the petitioner argues that the state trial court improperly scored certain offense variables ("OV") when calculating his sentence under the Michigan Sentencing Guidelines. He challenges the scoring of OV-4, Psychological Injury to a Victim, and OV-10, Exploitation of a Vulnerable Victim. He asserts that the minimum guidelines sentence should be fifty-one months and not one hundred forty-four months. The trial court heard and rejected the petitioner's challenges to the scoring of the Sentencing Guidelines offense variables at a sentencing hearing held on October 14, 2002. Sent. Tr., Oct. 14, 2002, at 13. The Michigan Court of Appeals affirmed the trial court on this issue:

> Defendant argues that no points should have been scored for OV 4 (serious psychological injury to the victim) because the victim sought therapy to resolve her issues associated with testifying in court, not to cope with her victimization. But defendant ignores the victim's testimony that she had been in therapy to deal with the effects of the assault and only began more frequent sessions near the time of the trial to cope with the stressors of the trial. . . . [T]he victim suffered emotional trauma as a direct result of the assault. Thus, the trial court did not abuse its discretion when it scored OV 4 at ten points because there was evidence that defendant inflicted a serious psychological injury on the victim.

> Defendant next argues that OV 10 (exploitation of a vulnerable victim) should have been scored five points instead of fifteen because there was no evidence of predatory conduct. . . . The trial court concluded from [defendant's testimony] that defendant singled out the thirteen-year-old victim, helped get her drunk, and then took advantage of her helplessness. We find that the trial court did not abuse its discretion in concluding that this evidence established predatory conduct warranting OV 10 to be scored at fifteen points.

*Sousa*, No. 244554, 2004 WL 136606, at *3.

The petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review because it is based solely on state law. *See McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Therefore, a claim that the trial court mis-scored offense variables four and ten in determining the state sentencing guidelines is not cognizable on habeas corpus review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797-98 (E.D. Mich. 1999). Claim VI does not entitle the petitioner to habeas relief.

E.

Finally, in claims one and five, the petitioner contends that his trial counsel rendered constitutionally ineffective assistance for her failure to (1) request an evidentiary hearing regarding contact between a juror and a prosecution witness and (2) request a polygraph examination. The respondent argues that these claims are procedurally defaulted because the petitioner did not raise them on direct appeal but raised them for the first time in a post-conviction motion for relief from judgment. As noted above, a federal court has the discretion to decide an easily-resolved question on the merits against a petitioner and avoid a complicated procedural-bar issue. The Court finds that the interests of judicial economy are best served by addressing the merits of these claims.

The Sixth Amendment guarantees the accused in a criminal proceeding the right to the effective assistance of counsel. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was

deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "Unless a defendant makes both showings [*i.e.*, deficient performance and resulting prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

The petitioner first argues that his trial counsel was ineffective for failing to request an evidentiary hearing to establish potential juror bias or misconduct. The Sixth Amendment right to trial by jury encompasses the right to a fair trial by a panel of impartial jurors. *Irvin v. Dowd*, 366 U.S. 717, 721-22 (1961); *United States v. Shackelford,* 777 F.2d 1141, 1145 (6th Cir. 1985). In *Remmer v. United States*, 347 U.S. 227, 229 (1954), the Supreme Court recognized that juries in criminal cases must be free of extraneous influences and held that such outside influences were to be considered presumptively prejudicial to the defendant. The Court wrote:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of

known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.

*Id*. at 229.

*Remmer* also set forth the requirement of a hearing to determine whether or not any outside or *ex parte* contact with jurors is prejudicial:

The trial court should not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

*Id.* at 229-230.

However, not every allegation of unauthorized communication with a juror requires a hearing pursuant to *Remmer*. *See White v. Smith*, 984 F.2d 163, 166 (6th Cir. 1993); *see also United States v. Walker*, 160 F.3d 1078, 1083 (6th Cir. 1998); *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997); *United States v. Rigsby*, 45 F.3d 120, 125 (6th Cir. 1995). The Sixth Circuit indicates that a *Remmer* hearing right arises only in response to a "colorable claim" or "[w]hen there is a credible allegation of extraneous influences." *See United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999); *Rigsby*, 45 F.3d at 124-25. Further, the unauthorized communication must "present[] a likelihood of affecting the verdict." *See Rigsby*, 45 F.3d at 123; *see also Frost*, 125 F.3d at 377. This generally occurs when the allegations involve "intentional improper contacts or contacts that had an obvious potential for improperly influencing the jury." *See Frost*, 125 F.3d at 377 (quotation marks and citation omitted).

The contact in this case involved juror Perry Aleksink and investigating officer Trooper Dennis Montgomery. On the first day of trial, after receiving instructions from the court not to make

contact with the parties or witnesses, Juror Aleksink was seen approaching Trooper Montgomery during a break on the first day of trial:

> THE COURT:  So there's a record, prior to bring[ing] the Jury in, after lunch I was informed by counsel that one of the jurors, specifically as I understand it, Juror Number Seven was observed conversing with some of the witnesses, or a witness. Do you know --

> MISS SCHMIDT: The prosecutor saw what was going on.  I don't know.

> MR. REENE: I was informed that a Juror had approached the investigating officer your Honor.  And after I received that information I went to the hallway, saw that a Juror was speaking to the investigating officer.

> At that point in time I went and got Miss Schmidt, advised her about what had happened, informed her that the conversation consisted of the Juror working for Botsford Towing, and having some other contact with the investigating officer.

> And, thereafter while I was telling Miss Schmidt that apparently the Juror wanted to know why I was talking to Miss Schmidt, if there was a problem, and asked the investigating officer again if there was an issue.

> Obviously it was disclosed you can't be speaking to witnesses, vice-versa.

> THE COURT:  I told them, but apparently it went right over their head.  What do you want me to do, bring in Seven and have him interrogated as to what he said, or are you satisfied what the officer said he said, or --

> MISS SCHMIDT:  No Judge, I don't think talking to the Juror is going to do anything to help.

> THE COURT:  Pardon?

> MISS SCHMIDT:  I don't think talking to the Juror will do anything to help with the -- they were informed not to do that, or the witnesses.

> I guess we should have told them not to talk.  I think you should inform the jurors they should avoid any contact with the witnesses.

> THE COURT: I'll remind the Jurors again, because of the problem here, but you know this is the problem with the physical layout of this courthouse.  The jurors walk right out in the hallway, there are all the witnesses.

MR. REENE:  That's what happened.  It's right outside down the hallway.

THE COURT: Everybody walks down the same steps, everybody comes in the same door, and --

MISS SCHMIDT:  Yes.

THE COURT:  Well, any way, we'll recess.

Trial Tr., Aug. 13, 2002, at 191-93.

Immediately after the contact, the prosecutor informed defense counsel of the nature of the contact.  The court asked defense counsel if she wanted to commence a *Remmer*-type hearing. Defense counsel declined.  This seems appropriate given the lack of any indication that an extraneous influence that might affect the outcome of the trial had been exerted during the brief albeit inappropriate contact.  As stated above, only in situations where credible allegations of improper extraneous contacts exist are *Remmer* hearings required.  The Court notes that defense counsel was not bothered enough by the contact to accept the court's invitation to investigate potential juror bias.

After the jury returned its verdict, prior to sentencing, the court conducted a hearing on September 30, 2002 at the prosecutor's request at which Juror Aleksink testified in detail about his contact with Trooper Montgomery ("September Hearing").  Aleksink explained that he did not know Trooper Montgomery's name when the witness list was read.  Hrg. Tr., Sept. 30, 2002, at 8.  Not initially, but "after awhile" he recognized Montgomery as an officer who was involved in the same automobile accident for which Aleksink towed the crashed vehicle.  *Id.* at 5, 8.  He elaborated on the content of his discussion with Montgomery: "It involved the accident, or a[n] accident, that I was wondering what was wrong with — how the person was, you know. . . ."  *Id.* at 6.  Aleksink testified that nothing he knew about Montgomery affected the decision he reached in the case.  *Ibid.*  He also

testified that Montgomery did not divulge any information to him that affected his deliberations. *Ibid.* Finally, Aleksink swore that the verdict he returned was based upon his honest view of the evidence as it was presented. *Id.* at 7.

It is not apparent from the record why defense counsel would not take up the court on its offer to make further inquiries into the improper juror contact. It is unlikely that prevailing professional norms would countenance ignoring the issue. As it turns out, however, the court actually conducted a *Remmer* hearing, albeit after trial. The evidence from the September Hearing revealed the limited nature of the communication between Aleksink and Montgomery. Based on that record, the petitioner cannot establish prejudice. The testimony at the hearing established that the contact between Juror Aleksink and Trooper Montgomery had nothing to do with the trial. Aleksink testified that his brief acquaintance with Montgomery similarly did not affect his deliberations as a juror. The contact was not prejudicial to the petitioner's right to a fair trial by an impartial jury. Finally, any potential prejudice arising from the contact was alleviated by the trial court's instructions regarding the jury's proper consideration of the case and the evidence presented at trial. Even if defense counsel's failure to request a hearing at the time of trial amounted to deficient performance, no prejudice has been shown. Habeas relief on this claim is not warranted.

In his next argument, the petitioner contends that his trial counsel was deficient for failing to request a polygraph examination of the petitioner. The trial court rejected this claim when denying the petitioner's post-conviction motion:

> Defendant contends that he was denied his statutory right to a polygraph examination pursuant to MCL 776.21 (5). Defendant asserts that his trial counsel was ineffective for not requesting or ensuring that Defendant was granted his right to a polygraph examination. Defendant also has the burden of showing that this error could have resulted in a different verdict. A thorough review of the file shows that there was enough evidence to sustain the jury's verdict such that this omission did not have a

> substantial effect on the verdict. Defendant cannot and did not demonstrate actual
> prejudice that, but for the alleged error, Defendant would have had a reasonably
> likely chance of acquittal. Defendant's Motion for Relief from Judgment fails on
> this
> issue.

Op. and Order *, Sousa*, No. 02-8333-FC, at 3 (Tuscola Co. Cir. Ct. Nov. 10, 2005) (unpublished).

As indicated by the state trial court, the evidence against the petitioner in this case was compelling. Both his niece, with whom he had a close relationship, and the victim positively and unwaveringly identified him as the perpetrator. The petitioner cannot establish that the absence of such testing affected the outcome of the proceedings. In any event, under Michigan law, even where a defendant passes a polygraph examination, the results are inadmissible at trial. *See People v. Phillips*, 469 Mich. 390, 397, 666 N.W.2d 657, 661 (2003) (citing *People v. Ray*, 431 Mich. 260, 265, 430 N.W.2d 626, 628 (1988); *People v. Barbara,* 400 Mich. 352, 364, 255 N.W.2d 171, 175 (1977)). In light of the fact that Michigan law precludes the admission of polygraph examination results at trial, counsel did not perform deficiently and was not ineffective for deciding not to have the petitioner take the test. *See, e.g., Houston v. Lockhart*, 9 F.3d 62, 63-64 (8th Cir. 1993). The petitioner is not entitled to habeas relief on claim five.

## IV.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED.**

-24-

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 30, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 30, 2010.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO